UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ROSZLYN WILLIAMS,                        :

                    Plaintiff,    :    05 Civ. 6949 (DAB)(HBP)

    -against-                            :
                                         REPORT AND
GEORGE LAURENCE JUROW, et al.,    :    RECOMMENDATION

                    Defendants.   :

----------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE DEBORAH A. BATTS, United States

District Judge,

I.  Introduction

          Plaintiff, pro se, brings this Section 1983 action

against fourteen defendants, alleging violations of her constitu-

tional rights and her alleged rights under 18 U.S.C. §§ 4, 241,

242, 1001, 1341, and for various other torts, and seeking both

monetary and injunctive relief (Amended Complaint, dated August

19, 2005) (Docket Item 17).  Defendants George Jurow and Susan

Knipps (collectively "State Defendants") move to dismiss plain-

tiff's complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6)

(Docket Item 37).  Defendants Claire Merkine, Rebecca Rubloff and

Renee Mittler (collectively, "Legal Aid Defendants"), move to

dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6)

and 12(c) (Docket Item 20).  Defendants Jeannie Samedi, Felix
Santiago, Sarah Rubin, Kathleen Wolters, Carl Hotnit, Kevin
Richards, Benjamin Williams, and Bill Evans (collectively "Munic-
ipal Defendants") move to dismiss plaintiff's complaint pursuant
to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) (Docket Item 47).[1]

        Plaintiff has not submitted any response to the three
dismissal motions, and by Order dated November 14, 2006 (Docket
Item 63), I advised plaintiff that if she did not submit her
opposition by December 11, 2006, I would resolve the motion on
the basis of defendants' papers alone.  Plaintiff did not make
any submission in response to this Order.  For the reasons set
forth below, I respectfully recommend that the motions to dismiss
be granted.

II.  Facts

        Plaintiff commenced this action on or about August 4,
2005.  Although plaintiff amended her complaint on or about
August 19, 2005, her allegations remained substantially the same.
Specifically, she alleges that the defendants, in their various
capacities, conspired to file a complaint against her charging

---

[1]One defendant, Raymond Burrowes, who appears to have been a
process server who served plaintiff with a complaint to appear in
Family Court, is not a New York City employee (see Municipal
Defendants' Memorandum of Law in Support of Their Motion to
Dismiss the Plaintiff's Complaint, dated November 15, 2005
("Municipal Def. Mem."), at 2), and has not joined in any of the
motions to dismiss.

that she had abused and neglected the medical care of her fifteen year-old son, Amir Evans (Amended Compl. ¶ 22).

According to plaintiff, the conspiracy originated when plaintiff complained to Doctor Felix Santiago, a pediatrician at Gouverneur Hospital in Manhattan, New York, on approximately May 19, 2005.  Plaintiff and Amir had had an appointment with Doctor Jeannie Samedi[2] and plaintiff complained to Doctor Santiago that Doctor Samedi was unsanitary (Amended Compl. ¶ 22-23).  Plaintiff alleges that in retaliation for her complaint and because she would not allow Doctor Samedi to examine Amir's genitals and refused to take Doctor Samedi's medical referral, Doctor Samedi conspired with Sarah Rubin, a social worker at Gouverneur Hospital, and Kevin Richards, a social worker for the New York City Administration for Children's Services ("ACS"), to file a complaint against plaintiff, alleging child abuse and medical neglect (Amended Compl. ¶ 24).  Plaintiff further alleges that Doctor Santiago conspired against her by failing to investigate her complaint fully.

Plaintiff goes on to allege that on or about May 23, 2005, Kevin Richards visited Amir at his school and told him that he was in "imminent danger" because he was suffering from asthma and a heart condition and that he would die if he did not receive

---

[2]Plaintiff does not provide a date for the visit with Doctor Samedi.

prompt medical attention.  Amir telephoned plaintiff following
this conversation, and plaintiff then spoke with Richards.  When
Richards told plaintiff that Amir was suffering from a medical
problem, plaintiff told him to put his concerns in writing
because she would not discuss Amir's physical condition over the
telephone with a stranger (Amended Compl. ¶ 25).  Plaintiff
claims that on the same day, ACS employees Kathleen Wolters,
Kevin Richards and Bill Evans made an ex parte motion before the
Honorable George L. Jurow, Judge of the Family Court of the State
of New York.  As a result, Judge Jurow ordered that Wolters would
be granted custody of Amir, but that Amir would be paroled to
plaintiff under the supervision of ACS (Amended Compl. ¶ 25).

Plaintiff claims that a second ex parte hearing was
held without plaintiff's knowledge on approximately June 1, 2005
before the Honorable Susan K. Knipps, Judge of the Family Court
of the State of New York (Amended Compl. ¶ 27).  Plaintiff
alleges that Judge Knipps issued an Order after that hearing
directing that plaintiff take Amir back to Doctor Samedi, and
appointing Legal Aid attorney Claire Merkine as the legal guard-
ian of Amir.  The Order also provided, however, that Amir be
paroled back to plaintiff (Amended Compl. ¶ 27).

Plaintiff claims that she received a complaint from
Kevin Richards several days later, which alleged that she had
committed child abuse and medical neglect (Amended Compl. ¶ 28).

4

She also received an Order demanding that she appear in Family Court in New York County on June 6, 2005.

When she appeared in Family Court on June 6, plaintiff claims that the atmosphere in the waiting area was "highly stressful" and caused her "to suffer a heart condition, due to intentional infliction of emotional stress induced by all par-ties" (Amended Compl. ¶ 30) (emphasis in original). Plaintiff alleges that, as a result of the stress, she had to leave the hearing and seek medical attention at New York Downtown Hospital. Plaintiff claims that after she left Family Court, Amir remained with family and close friends in Family Court while Judge Knipps held a hearing and awarded custody of Amir to "a person claiming to be [plaintiff's] sister" (Amended Compl. ¶ 30).[3] Furthermore, plaintiff claims that she was hospitalized for two days as a result of her experience in Family Court. Plaintiff also claims that Legal Aid attorney Claire Merkine spoke to Amir outside of the courtroom, telling him that "if your mother doesn't cooperate with ACS you will be placed in a home" (Amended Compl. ¶ 30). Without providing any more detail, plaintiff also claims that Rebecca Rubloff, a second Legal Aid attorney, "participated in

_____

[3]Although plaintiff does not expressly state that Amir was paroled to plaintiff after this hearing, she never alleges that Amir was, in fact, ever removed from her custody. Because of other allegations made in her Amended Complaint, including the fact that she was ordered to take Amir to a doctor following the June 6, 2005 hearing, I infer that Amir was paroled to plaintiff and remains with her.

this fraudulent hearing for the benefit of financial gain and peer recognition" (Amended Compl. ¶ 30).

At some point between June 6 and June 17, 2005, plaintiff received, through a court-appointed attorney, an Order from Judge Knipps directing that she take Amir back to Doctor Samedi. Plaintiff complied, and Doctor Samedi subsequently referred plaintiff and Amir to Doctor Monika Rutkowski, a pediatric cardiologist at Bellevue Hospital (Amended Compl. ¶ 31).  Doctor Rutkowski performed a cardiac examination; according to plaintiff, the examination showed that Amir was not asthmatic and did not have a heart murmur (Amended Compl. ¶ 31).

On June 17, 2005, plaintiff appeared at another hearing in front of Judge Knipps.  Plaintiff claims that Judge Knipps and Carl Hotnit, an attorney at ACS, conspired with other defendants to force plaintiff to participate in the hearing.  Plaintiff further alleges that after Hotnit threatened to have Amir removed from plaintiff's custody, plaintiff provided Hotnit with the medical report for Amir prepared by Doctor Rutkowski (Amended Compl. ¶ 32).  Plaintiff also claims that when she demanded legal proof of Judge Knipps' jurisdiction over her and Amir, Judge Knipps refused and stated that plaintiff must "either cooperate with Administration for Children Services, or suffer the headache and heartbreak later" (Amended Compl. ¶ 32).

Plaintiff further alleges that attorney Renee Mittler gave false testimony at a hearing held on or about July 17, 2005 when she stated that Amir had told her that he has had a heart murmur since he was a child (Amended Compl. ¶ 33).

On or about July 28, 2005, plaintiff and Amir appeared at another hearing in front of Judge Knipps.  When Judge Knipps asked plaintiff whether she had taken Amir to a doctor, plaintiff claims that she told Judge Knipps that this information was none of her business and left the courtroom with Amir (Amended Compl. ¶ 34).

Based on the foregoing, plaintiff asserts seventeen claims in her Amended Complaint:  (1) violation of her rights under the First, Fourth, Fifth, Sixth, Seventh, Eighth and Fourteenth Amendments of the Constitution; (2) violation of 42 U.S.C. § 1983; (3) mail fraud in violation of 18 U.S.C. § 1341;[4] (4) fraud; (5) perjury in violation of 18 U.S.C. § 1001; (6) "malicious prosecution" in violation of plaintiff's constitutional rights under the Seventh, Eighth, Ninth, Tenth, Eleventh and Fourteenth Amendments by "conspiring to intimidate[] and imprison the plaintiff without due process"; (7) defamation of character and intentional infliction of emotional distress; (8) criminal conspiracy and deprivation of constitutional rights in

---

[4]Plaintiff alleges this claim only against the Raymond Burrowes and municipal defendants, Kathleen Wolters, Kevin Richards, Bill Evans (Amended Compl. ¶ 46).

violation of 18 U.S.C. § § 241 and 242; (9) "abuse of prosecuto-
rial discretion"; (10) "conspiracy to alienate [Amir] from
[plaintiff]"; (11) misprision of a felony in violation of 18
U.S.C. § 4; (12) extortion; (13) threatening plaintiff with
assault with a deadly weapon (14) racial and religious discrimi-
nation based on defendants' conspiracy "to violate plaintiff in
her beliefs and decisions regarding herself and her son"; (15)
threatening plaintiff with kidnaping and false imprisonment; (16)
trespass;[5] and (17) conspiracy to infringe the alleged copyright
on plaintiff's signature.

III.  Analysis

     A.  The Standard Applicable
         to a Motion to Dismiss

          The standards applicable to a motion to dismiss for
lack of subject matter jurisdiction pursuant to Rule 12(b)(1)
have been comprehensively set forth by the Honorable Denise L.
Cote, United States District Judge, in Cromer Finance Ltd. v.
Berger, 137 F. Supp.2d 452, 467 (S.D.N.Y. 2001):

          In assessing a motion to dismiss for lack of subject
          matter jurisdiction, a court must "accept as true all
          material factual allegations in the complaint," Ship-
          ping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d
          Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232,
          236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), but refrain

_____

     [5]Plaintiff's claim of trespass is alleged against only Kevin
Richards and Raymond Burrowes (Amended Compl. ¶ 59).

8

from "drawing from the pleadings inferences favorable
to the party asserting [jurisdiction]." Id. (citing
Norton v. Larney, 266 U.S. 511, 515, 45 S.Ct. 145, 69
L.Ed. 413 (1925)).  Courts evaluating Rule 12(b)(1)
motions "may resolve the disputed jurisdictional fact
issues by reference to evidence outside the pleadings,
such as affidavits." Zappia Middle East Constr. Co. v.
Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).
Where jurisdiction is "so intertwined with the merits
that its resolution depends on the resolution of the
merits," the court should use the standard "applicable
to a motion for summary judgment" and dismiss only
where "no triable issues of fact" exist. London v.
Polishook, 189 F.3d 196, 198-99 (2d Cir. 1999) (cita-
tion omitted); see also Europe and Overseas Commodity
Traders, S.A. v. Banque Paribas London, 147 F.3d 118,
121 n.1 (2d Cir. 1998).

(Alteration in original); see also Makarova v. United States, 201

F.3d 110, 113 (2d Cir. 2000); Transatlantic Marine Claims Agency,

Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997);

S.E.C. v. Princeton Econ. Int'l Ltd., 84 F. Supp.2d 452, 453-54

(S.D.N.Y. 2000).

The standards applicable to a motion to dismiss pursu-

ant to Rule 12(b)(6) require only brief review.

When deciding a motion to dismiss under Rule
12(b)(6), [the court] must accept as true all
well-pleaded factual allegations of the complaint and
draw all inferences in favor of the pleader.  See City
of Los Angeles v. Preferred Communications, Inc., 476
U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986);
Miree v. DeKalb County, 433 U.S. 25, 27 n.2, 97 S.Ct.
2490, 53 L.Ed.2d 557 (1977) (referring to "well-pleaded
allegations"); Mills v. Polar Molecular Corp., 12 F.3d
1170, 1174 (2d Cir. 1993).  "'[T]he complaint is deemed
to include any written instrument attached to it as an
exhibit or any statements or documents incorporated in
it by reference.'" Int'l Audiotext Network, Inc. v.
Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)
(quoting Cortec Indus., Inc. v. Sum Holding L.P., 949
F.2d 42, 47 (2d Cir. 1991)).  The Court also may con-

9

sider "matters of which judicial notice may be taken." Leonard T. v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (citing Allen v. WestPoint--Pepperill, Inc., 945 F.2d 40, 44 (2d Cir. 1991)). In order to avoid dismissal, a plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." Gebhardt v. Allspect, Inc., 96 F. Supp.2d 331, 333 (S.D.N.Y. 2000) (quoting 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[a] [b] (3d ed. 1997)).

Hoffenberg v. Bodell, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3 (S.D.N.Y. Sept. 30, 2002); see Gorman v. The Consol. Edison Co., --- F.3d ----, 2007 WL 1545992 at *3 (2d Cir. May 30, 2007); Bernstein v. City of New York, 06 Civ. 895 (RMB), 2007 WL 1573910 at *3 (S.D.N.Y. May 24, 2007).

The Supreme Court in Bell Atlantic Corp. v. Twombly recently held that in order to survive a Rule 12(b)(6) motion to dismiss, it is not necessary for a plaintiff to provide detailed factual allegations, but the factual allegations asserted must be "enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1965 (2007). See also Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, Inc., 05-CV-7776 (KMK), 2007 WL 1701813 at *4 (S.D.N.Y. June 12, 2007). In doing so, the Court expressly disavowed the oft-cited standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

10

his claim which would entitle him to relief."  See Bell Atlantic Corp. v. Twombly, supra, 127 S.Ct. at 1959-60.

The Second Circuit has interpreted Bell Atlantic Corp. v. Twombly as "requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some allegations in those contexts where such amplification is needed to render the claim plausible."  Iqbal v. Hasty, --- F.3d ----, 2007 WL 1717803 at *11 (2d Cir. June 14, 2007)(emphasis in original).

The Rule 12(b)(6) standard also applies to a Rule (12)(c) motion for judgment on the pleadings.

> In order for a party to succeed on a motion for judgment on the pleadings under Rule 12(c), which permits a party to move for judgment after the pleadings are closed but within such time as not to delay trial, a court must apply the same standard as on a Rule 12(b)(6) motion and 'view the pleading in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party.'  Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir. 1994) (quoting Madonna v. United States, 878 F.2d 62, 65 (2d Cir. 1989)).

Chen v. Trustees of Columbia Univ., 00 Civ. 7532 (RCC), 2001 WL 815521 at *1 (S.D.N.Y. July 18, 2001).  See also Shmueli v. City of New York, 03 CV 1195 (PAC), 2007 WL 1659210 at *7 (S.D.N.Y. June 7, 2007).

Finally, I must construe plaintiff's amended complaint liberally in light of her pro se status, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

B.   <u>Claims against State Defendants</u>

          Plaintiff alleges that the State Defendants, Judges
Knipps and Jurow, conspired with the other defendants and improp-
erly made adverse rulings against her in Family Court.  In all,
plaintiff alleges sixteen claims against the State Defendants.[6]
The State Defendants argue, among other things, that the doctrine
of judicial immunity bars all claims against them (Memorandum of
Law on Behalf of State Defendants in Support of Their Motion to
Dismiss the Amended Complaint, dated September 23, 2005, at 8-
11).

          The doctrine of judicial immunity protects judges from
suits concerning the exercise of their judicial functions.
<u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991).  "Without insulation from
liability, judges would be subject to harassment and intimidation
and would thus 'lose that independence without which no judiciary
can either be respectable or useful.'"  <u>Young v. Selsky</u>, 41 F.3d
47, 51 (2d Cir. 1994).  Thus, a judge enjoys immunity even if bad
faith or malice is alleged.  <u>Mireles v. Waco</u>, <u>supra</u>, 502 U.S. at
11; <u>Stump v. Sparkman</u>, 435 U.S. 349, 356-57 (1978); <u>Root v.
Liston</u>, 444 F.3d 127, 132 (2d Cir. 2006).  Because "the scope of
the judge's jurisdiction must be construed broadly where the
issue is the immunity of the judge," <u>Stump v. Sparkman</u>, <u>supra</u>,

_____

          [6]Plaintiff does not include State Defendants in her claim
for trespass (Amended Compl. ¶ 59).

435 U.S. at 356, the only two exceptions to judicial immunity are "non-judicial" acts (i.e., acts not normally performed in a judicial capacity) and actions taken by a judge in the complete absence of jurisdiction.  <u>Mireles v. Waco</u>, <u>supra</u>, 502 U.S. at 11; <u>Huminski v. Corsones</u>, 396 F.3d 53, 75 (2d Cir. 2005); <u>Shuster v. Oppelman</u>, 962 F. Supp. 394, 396 (S.D.N.Y. 1997).

          In this case, Judges Knipps and Jurow are clearly entitled to immunity.  Plaintiff does not allege their acts were non-judicial, but rather, questions their jurisdiction over her and Amir, and their rulings.  Plaintiff's jurisdictional claim is frivolous.  The State Defendants have state constitutional and statutory jurisdiction to preside over the Family Court proceedings involving plaintiff and Amir.  N.Y. Const. Art. VI, § 13(b)[7]; N.Y. Fam. Ct. Act §§ 1011[8], 1013(a)[9].  In addition, the

_____

[7]N.Y. Const. Art. VI, § 13(b) provides, in pertinent part:

> The family court shall have jurisdiction over the following classes of actions and proceedings which shall be originated in such family court in the manner provided by law:  (1) the protection, treatment, correction and commitment of those minors who are in need of the exercise of the authority of the court because of circumstances of neglect, delinquency or dependency, as the legislature may determine; (2) the custody of minors except for custody incidental to actions and proceedings for marital separation, divorce, annulment of marriage and dissolution of marriage; . . . and (7) as may be provided by law: the guardianship of the person of minors and, in conformity with the provisions of section seven of this article, crimes and offenses by or against minors or between spouses or between parent and child or between members
>
>                                        (continued...)

13

rulings that are the bases of plaintiff's claims, despite being adverse to plaintiff, are the very essence of "judicial functions" and cannot, therefore, be the basis for liability.

_____

(...continued)
of the same family or household.  Nothing in this section shall be construed to abridge the authority or jurisdiction of courts to appoint guardians in cases originating in those courts.

[8]N.Y. Fam. Ct. Act § 1011 provides:

This article is designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being. It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met.

[9]N.Y. Fam. Ct. Act § 1013(a) provides:

(a) The family court has exclusive original jurisdiction over proceedings under this article alleging the abuse or neglect of a child.

(b) For the protection of children, the family court has jurisdiction over proceedings under this article notwithstanding the fact that a criminal court also has or may be exercising jurisdiction over the facts alleged in the petition or complaint.

(c) In determining the jurisdiction of the court under this article, the age of the child at the time the proceedings are initiated is controlling.

(d) In determining the jurisdiction of the court under this article, the child need not be currently in the care or custody of the respondent if the court otherwise has jurisdiction over the matter.

All of plaintiff's allegations against the State
Defendants are vague and conclusory, with the sole exception of
her allegation that Judge Knipps stated during a hearing that
plaintiff must "either cooperate with Administration for Children
Services, or suffer the headache and heartbreak later" (Amended
Compl. ¶ 32).  However, even if I were to assume that Judge
Knipps made this statement with malice, it is still squarely
within her judicial function, and therefore, she enjoys immunity.
Mireles v. Waco, supra, 502 U.S. at 11 ("[J]udicial immunity is
not overcome by allegations of bad faith or malice. . . .");
Huminski v. Corsones, 396 F.3d 53, 75 (2d Cir. 2005)(same).
Accordingly, plaintiff's claims against the State Defendants
should be dismissed.[10]

C.   <u>Legal Aid Defendants</u>

1.   <u>Constitutional and Civil Rights Claims</u>

The Legal Aid Defendants argue that they are not liable
for the alleged constitutional and civil rights violations
because plaintiff has failed to allege, as she is required to do,
that the Legal Aid Defendants' conduct amounted to "state action"

---

[10]Although the State Defendants also claim that they are
entitled to dismissal on several other grounds, their entitlement
to dismissal on the ground of judicial immunity is so clear, it
is unnecessary to address these other arguments.

or action under color of state law (Legal Aid Memorandum of Law, dated September 13, 2005, at 4).

"The Constitution's protections of individual liberty and equal protection apply in general only to action by the government." Edmonson v. Leesville Constr. Co., Inc., 500 U.S. 614, 619 (1991) (citations omitted); see Daniel v. Safir, 135 F. Supp.2d 367, 373 (E.D.N.Y. 2001) ("It is fundamental that state action is a required element of a claim for a constitutional violation").

"[A] legal aid society ordinarily is not a state actor amenable to suit under § 1983." Schnabel v. Abramson, 232 F.3d 83, 86-87 (2d Cir. 2000). The Legal Aid Defendants are employed by a "private not for profit legal services corporation. . . . organized under the laws of New York [that] exists independent of any state or local regulatory authority." Neustein v. Orbach, 732 F. Supp. 333, 336 n.3 (E.D.N.Y. 1990).

> [Legal Aid] attorneys do not represent their clients under color of state law. Although the Society by contract has undertaken to make available legal services [to children in Family Court proceedings], its history, constitution, bylaws, organization and management definitely establish that it is a private institution in no manner under State or City supervision or control.

Neustein v. Orbach, supra 732 F. Supp. at 345-46 (citations omitted). See also Elmasri v. England, 111 F. Supp.2d 212, 221 (E.D.N.Y. 2000) (court-appointed legal guardian during custody proceedings was not a state actor, despite her "appointment by a

New York State court, [and] the fact that [she was] paid by state
funds"); Di Costanzo v. Henriksen, 94 Civ. 2464 (MGC), 1995 WL
447766 at *2 (S.D.N.Y. July 28, 1995) (a person appointed by the
state to be a legal guardian during custody proceeds in Family
Court does not act under color of state law for purposes of
Section 1983).  Since plaintiff has alleged no facts that would,
even if accepted as true, establish that the Legal Aid Defen-
dants' conduct constituted state action, the constitutional
claims against them should be dismissed.

        Similarly, plaintiff's claims against the Legal Aid
Defendants pursuant to 42 U.S.C. § 1983 should be dismissed.
Section 1983 imposes liability on individuals who, while acting
under the color of state law, violate an individual's federally-
protected rights.  Charlton v. State of New York, 03 Civ. 8986
(LAK), 2006 WL 406315 at *5 (S.D.N.Y. Feb. 22, 2006); Perkins v.
Brown, 285 F. Supp.2d 279, 283 (E.D.N.Y. 2003); Johnson v.
Bendheim, 00 Civ. 720 (JSR), 2001 WL 799569 at *5 (S.D.N.Y. July
13, 2001).  Because the Legal Aid Defendants were not public
employees and were not acting under color of state law, they are
not subject to liability under 42 U.S.C. § 1983.  "Like the
state-action requirement of the Fourteenth Amendment, the un-
der-color-of-state-law element of § 1983 excludes from its reach
merely private conduct, no matter how discriminatory or wrong-

17

ful." <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49 (1999) (inner quotations and citations omitted).

Since plaintiff has not alleged any facts support a finding that the Legal Aid Defendants were acting under color of state law to any degree when they engaged in the conduct at issue, all of plaintiff's claims for violation of plaintiff's federally protected rights (<u>i.e</u>. counts one, two, six, nine, ten and fourteen) should be dismissed as to the Legal Aid Defendants.

2.  Claims That Allege
    <u>Federal Crimes</u>

Plaintiff also asserts claims against the Legal Aid Defendants for:  (1) false statements in violation of 18 U.S.C. § 1001 (count five); (2) criminal conspiracy and deprivation of constitutional rights in violation of 18 U.S.C. §§ 241 and 242 (count eight); and (3) misprision of felony in violation 18 U.S.C. § 4 (count eleven).

"The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 568 (1979), <u>quoting</u> <u>Cannon v. University of Chicago</u>, 441 U.S. 677, 688 (1979).  <u>See also</u> <u>Vasile v. Dean Witter Reynolds Inc.</u>, 20 F. Supp.2d 465, 477 (E.D.N.Y. 1998), <u>aff'd</u> <u>without</u> <u>opinion</u>, 205 F.3d 1327 (2d Cir. 2000) ("[i]t is [] a general precept of criminal law that unless the statute

18

specifically authorizes a private right of action, none exists.").  It is well-established in this Circuit that there is no private right of action for the federal crimes for which plaintiff seeks relief.

The overwhelming weight of authority holds that there is no private right of action for a violation of 18 U.S.C. § 1001.  United States v. D'Amato, 507 F.2d 26, 26-27 (2d Cir. 1974); Bender v. Gen. Servs. Admin., 05 Civ. 6459 (GEL), 2006 WL 988241 at *1 (S.D.N.Y. April 14, 2006); Vasile v. Dean Witter Reynolds, Inc., 20 F. Supp.2d 465, 478 (S.D.N.Y. 1998), aff'd without opinion, 205 F.3d 1327 (2d Cir. 2000); Williams v. McCausland, 791 F. Supp. 992, 1001 (S.D.N.Y. 1991), aff'd without opinion, 983 F.2d 1047 (2d Cir. 1992), citing Federal Sav. & Loan Ins. Corp. v. Reeves, 816 F.2d 130, 138 (4th Cir. 1987) and Johnston v. Torres, 88 Civ. 7697 (MJL), 1990 WL 195926 at *2 (S.D.N.Y. Nov. 27, 1990).  Plaintiff offers no reason to depart from these precedents.  Furthermore, 18 U.S.C. § 1001 prohibits the making of fraudulent statements or representations in matters involving federal government agencies.  Plaintiff's amended Complaint no where alleges that false statements were made to any federal authorities.

Plaintiff's claims for relief under 18 U.S.C. §§ 241 and 242 also fail because there is no private right of action under these two federal statutes.  Maccaro v. New York City

19

Health & Hosp. Corp., 07-CV-1413 (ENV)(LB), 2007 WL 1101112 at *2
(E.D.N.Y. Apr. 11, 2007); Bender v. Gen. Servs. Admin., supra,
2006 WL 988241 at *1; Dugar v. Coughlin, 613 F. Supp. 849, 852
n.1 (S.D.N.Y. 1985).

        Similarly, no private right of action exists under 18
U.S.C. § 4.  See Dugar v. Coughlin, supra, 613 F. Supp. at 852
n.1; see also United States ex rel. Farmer v. Kaufman, 750 F.
Supp. 106, 108 (S.D.N.Y. 1990).

        Accordingly, counts five, eight, and eleven should also
be dismissed as to the Legal Aid Defendants.

        3.  Plaintiff's Remaining Claims

        Plaintiff's remaining claims against the Legal Aid
Defendants allege:  (1) conspiracy to infringe plaintiff's
autograph (count seventeen); (2) extortion (count twelve); (3)
fraud (count four); (4) defamation of character and intentional
infliction of emotional distress (count seven); (5) threat of
assault with a deadly weapon (count thirteen); and (6) threat of
kidnaping and false imprisonment (count fifteen).

        In her seventeenth count, plaintiff alleges that
defendants violated federal copyright law by "conspiring to make
a mockery of the plaintiff's property and make use of said
property without compensation to the property of the plaintiff,
i.e. the names of the plaintiff and her son's name" (Amended

                                20

Compl. ¶ 60).  To state a claim for copyright infringement, plaintiff must allege:  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991) (citation and internal quotation omitted).  A name, however, is not copyrightable.  Feist Publ'ns v. Rural Tel. Serv. Co., supra, 499 U.S. at 361; accord Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 418 (2d Cir. 2004); Fin. Info., Inc. v. Moody's Investors Serv., Inc., 751 F.2d 501, 505 (2d Cir. 1984). Thus, this claim fails as a matter of law.

In count twelve, plaintiff claims that the Legal Aid Defendants committed extortion by conspiring to take her "son and his school and medical records [and to hold them] as ransom and mak[ing] use of said property without compensation to the plaintiff" (Amended Compl. ¶ 55).  However, there is no private right of action under the federal extortion statute.  Barge v. Apple Computer, 95 Civ. 9715 (KMW),1997 WL 394935 at *2 (S.D.N.Y. July 15, 1997) (no private right of action for extortion).  Therefore, to the extent that plaintiff alleges that defendants committed extortion under the federal statute, this claim also fails as a matter of law.

Since all of plaintiff's remaining claims against the Legal Aid Defendants (and count twelve to the extent that it can be read to assert a claim under N.Y. Penal L. § 155.05(e)) are

state law claims for which plaintiff does not allege an independent basis of subject matter jurisdiction, I recommend that these claims all be dismissed without prejudice.  Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001), quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726-27 (1966); accord Sadallah v. City of Utica, 383 F.3d 34, 40 (2d Cir. 2004).

Accordingly, I also recommend that count seventeen be dismissed as to the Legal Aid Defendants with prejudice, and that counts four, seven, twelve, thirteen, and fifteen be dismissed as to the Legal Aid Defendants without prejudice.

### D.  Claims Against Municipal Defendants

#### 1.  Constitutional and Civil Rights Claims

Plaintiff asserts various constitutional and state-law tort claims against Doctors Samedi and Santiago, social worker Sarah Rubin, and ACS caseworkers Kevin Richards, Benjamin Williams and Bill Evans, arising from their allegedly false report that plaintiff had committed child abuse.  Plaintiff also asserts the same claims against ACS attorneys Carl Hotnit and Kathleen Wolters, arising from their prosecuting plaintiff in Family Court.  The Municipal Defendants argue that plaintiff fails to allege the facts necessary to support her constitutional and

civil rights claims, and in the alternative, that they are protected by qualified immunity (Municipal Def. Mem., at 7-8).[11]

In accordance with the mode of analysis suggested by the Supreme Court, I shall first consider whether plaintiff has stated a viable Section 1983 claim against the Municipal Defendants.  If necessary, I shall then address the issue of qualified immunity.  Saucier v. Katz, 533 U.S. 194, 201 (2001); County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998); Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002); see also Panetta v. Crowley, 460 F.3d 388, 394-95 (2d Cir. 2000) ("Before deciding whether [defendant] is entitled to qualified immunity, we must decide whether [plaintiff] has alleged a constitutional violation at all." (internal quotation and citation omitted)).

A parent has a "constitutionally protected liberty interest in the care, custody and management of their children," which includes a fundamental right under the Fourteenth Amendment to remain together.  Tennenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999) (citing cases).  This right is not absolute, however, and must be balanced with the state's strong interest in

---

[11]The Municipal Defendants also argue that Doctors Samedi and Santiago, social worker Sarah Rubin, and ACS caseworkers Kevin Richards, Benjamin Williams and Bill Evans are entitled to dismissal on the basis of statutory immunity (Municipal Def. Mem., at 14).  Since I conclude that plaintiff has failed to allege the necessary facts to establish constitutional and civil rights violations, I do not address the issue of statutory immunity.

the welfare of children.  Thus, state interference with family integrity "must be in accord with procedural and substantive due process guarantees, as well as rights under the Fourth Amendment, among other provisions." Tennenbaum v. Williams, supra, 193 F.3d at 593-94.

> Procedural due process "generally requires a hearing prior to depriving a parent of custody or a prompt post-deprivation hearing if the child is removed under emergency circumstances," while substantive due process protects against "arbitrary government intrusions by requiring a reasonable basis or justification for such actions.

Shapiro v. Kronfeld, 00 Civ. 6286 (RWS), 2004 WL 2698889 at *14 (S.D.N.Y. Nov. 24, 2004), quoting Velez v. Reynolds, 325 F. Supp.2d 325, 303 (S.D.N.Y. 2004).  Here, because plaintiff does not allege that she was ever deprived of custody of Amir, the Fourteenth Amendment procedural due process claim should be dismissed.

Assuming that plaintiff also makes a substantive due process claim under the Fourteenth Amendment, this claim also fails.  "The right to family integrity is not absolute and does not include a constitutional right to be free from child abuse investigations." Shapiro v. Kronfeld, supra, 2004 WL 2698889 at *14.  The Second Circuit has held that in order to prevail on a substantive due process claim involving family integrity, the plaintiff needs to demonstrate that the separation from her child was "so shocking, arbitrary, and egregious that the Due Process

24

clause would not countenance it even were it accompanied by full procedural protection." Anthony v. City of New York, 339 F.3d 129, 143 (2d Cir. 2003).  In light of this stringent standard, brief removal of the child from the parent in most cases "do[es] not rise to the level of a substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation, and court confirmation of the basis for removal." Nicholson v. Scoppetta, 344 F.3d 154, 172 (2d Cir. 2003) (ex parte removals do not infringe on plaintiff's substantive due process rights).

        In any event, plaintiff does not allege that Amir was ever physically removed from her care and control, and any separation between plaintiff and Amir that occurred while plaintiff was in the hospital was brief.  Accordingly, there was no violation of plaintiff's substantive due process rights.

        In addition, because plaintiff does not allege that Amir was removed from her control, there can be no Fourth Amendment violation. Kia P. v. McIntyre, 235 F.3d 749, 762 (2d Cir. 2000) ("[T]he Fourth Amendment applies in the context of the seizure of a child by a government-agency official during a civil child-abuse or maltreatment investigation.").

        Plaintiff has not alleged any facts with respect to the Municipal Defendants that would even remotely suggest violations of the First, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth or

25

Eleventh Amendments, nor does she allege any facts that she was the victim of racial or religious discrimination.

Plaintiff's contention that defendants have maliciously prosecuted her and abused their "prosecutorial discretion" in violation of her constitutional rights fails to state a claim. "The Second Circuit has consistently held that a claim for malicious prosecution under Section 1983 requires the plaintiff to prove the elements of malicious prosecution under the tort law of the forum state." Sundbye v. Ogunleye, 3 F. Supp.2d 254, 260 (E.D.N.Y. 1998), citing Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995).  It is essential to the claim that the plaintiff establish that the proceeding terminated in her favor.  Sundbye v. Ogunleye, supra, 3 F. Supp.2d at 260; Babi-Ali v. City of New York, 979 F. Supp. 268, 276 (S.D.N.Y. 1997).  Because plaintiff has not alleged that the Family Court proceeding terminated in her favor, plaintiff's malicious prosecution claim fails to state a claim as to the Municipal Defendants upon which relief may be granted.

Accordingly, counts one, two, six, nine, ten and fourteen should be dismissed as to the Municipal Defendants.

2.  Claims That Allege
    Federal Crimes

Plaintiff asserts claims against the Municipal Defen-dants for violations of the same federal criminal statutes that

26

she asserts against the Legal Aid Defendants.  For the same reasons set forth above in Section III (C)(2), I respectfully recommend that these claims also be dismissed as to the Municipal Defendants.

Plaintiff also alleges in count three that Municipal Defendants Kathleen Wolters, Kevin Richard and Bill Evans are liable to plaintiff for violating the mail fraud statute, 18 U.S.C. § 1341.  However, this statute does not create a private right of action.  See Silva v. Neumel, 152 F.3d 920, 1998 WL 398804 at *1 (2d Cir. 1998); Official Publ'ns, Inc. v. Kable News Co., 884 F.2d 664, 667 (2d Cir. 1998); accord Garay v. U.S. Bancorp, 303 F. Supp.2d 299, 303 (E.D.N.Y. 2004); Pharr v. Evergreen Gardens, Inc., 03 Civ. 5520 (HB), 2004 WL 42262 at *1 (S.D.N.Y. Jan. 7, 2004).

Accordingly, I also recommend that counts three, five, eight, and eleven be dismissed as to the Municipal Defendants.

3.  Plaintiff's Remaining Claims

Plaintiff's remaining claims against the Municipal Defendants allege:  (1) conspiracy to infringe plaintiff's autograph (count seventeen); (2) extortion (count twelve); (3) fraud (count four); (4) defamation of character and intentional infliction of emotional distress (count seven); (5) threat of assault with a deadly weapon (count thirteen); and (6) threat of

27

kidnaping and false imprisonment (count fifteen).  Plaintiff also alleges that one municipal defendant, Kevin Richards, committed trespass (count sixteen).

As noted above in Section III (C)(3), because plaintiff's name in not copyrightable, <u>Feist Publ'ns v. Rural Tel. Serv. Co.</u>, <u>supra</u>, 499 U.S. at 361, count seventeen should be dismissed with prejudice as to the Municipal Defendants.

All of plaintiff's remaining claims against the Municipal Defendants are state law claims.  Because all the federal claims against the Municipal Defendants should be dismissed and because plaintiff alleges no independent basis for subject matter jurisdiction as to these remaining state law claims, I recommend that counts four, seven, twelve, thirteen, fifteen and sixteen be dismissed as to the Municipal Defendants without prejudice. <u>Giordano v. City of New York</u>, <u>supra</u>, 274 F.3d at 754.

IV.  <u>Conclusion</u>

Accordingly, for the all the foregoing reasons, I respectfully recommend that:  (1) all counts be dismissed as to the State Defendants; (2) counts four, seven, twelve, thirteen and fifteen be dismissed as to the Legal Aid Defendants without prejudice and all other counts be dismissed as to the Legal Aid Defendants with prejudice; and (3) counts four, seven, twelve, thirteen, fifteen and sixteen be dismissed as to the Municipal

28

Defendants without prejudice and all other counts be dismissed as to the Municipal Defendants with prejudice.  If this Report and Recommendation is accepted, all claims against all defendants will be dismissed, except for plaintiff's claims against defendant Raymond Burrowes.

## V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6(a) and 6(e).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, United States District Judge, Room 2510, 500 Pearl Street, New York, New York 10007 and to the chambers of the undersigned, Room 750, 500 Pearl Street, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Batts.  **FAILURE TO OBJECT WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  Thomas v. Arn, U.S. 140 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237 & n.2 (2d Cir.

1983).

Dated:   New York, New York
         June 29, 2007

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Ms. Williams
120 Columbia Street
Apt. 10-D
New York, New York 10002

Constantine Speres, Esq.
Assistant Attorney General
State of New York
120 Broadway
New York, New York 10271

Martha Anne Calhoun, Esq.
Assistant Corporation Counsel
City of New York
100 Church Street
New York, New York 10007